IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CCG LEASING, LLC, a Utah limited liability company; and PETER MALINKA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD JOHNSON, an individual; SEF SIM 2018, LLC, an Arizona limited liability company; SIMULATOR EQUIPMENT FINANCING LLC, an Arizona limited liability company; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:21-CV-714-TS-DAO<br><br>District Judge Ted Stewart |

Plaintiffs CCG Leasing, LLC and Peter Malinka sue Defendants Richard Johnson; SEF SIM 2018, LLC; and Simulator Equipment Financing LLC for breach of contract concerning an equipment purchase. Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim. For the reasons below, the court will grant the motion.

I. BACKGROUND

CCG Leasing, LLC ("CCG") is a Utah LLC whose sole member is Malinka, a Utah resident.[1] CCG is in the business of securing financing for investment assets.[2] Johnson is the owner/sole member and manager of SEF SIM 2018, LLC ("SEF") and Simulator Equipment

---

[1] Notice of Removal ¶¶ 4–5, Docket No. 2.

[2] Compl. ¶ 9.

1

Financing LLC ("Financing").[3] All Defendants are domiciled in Arizona[4] and are in the business of purchasing, selling, relocating, and installing flight simulators and other equipment.[5]

According to the complaint, in December 2016, Johnson reached out to Malinka for assistance putting together a deal with a potential buyer for an Airbus flight simulator (the "Airbus deal"). Malinka agreed to lend his expertise in exchange for a commission. Malinka secured a buyer and Johnson successfully closed the Airbus deal, with final resolution of the deal in October 2017. Malinka and Johnson continued to correspond regarding other potential deals.

In January 2018, Johnson allegedly informed Malinka that he could purchase a Boeing flight simulator (the "simulator") out of receivership or bankruptcy in California, after which Plaintiffs could then lease the simulator to a lessee in Florida (the "Boeing deal"). Johnson traveled to Utah, where he met with Malinka and potential investors. In July 2018, Johnson (on behalf of SEF) and Malinka (on behalf of CCG) signed a Master Purchase and Sales Agreement for the Boeing simulator (the "Agreement").[6] Plaintiffs thereafter made partial payments to Defendants against the price of the simulator and Defendants purchased the simulator for Plaintiffs.

On December 28, 2018, Johnson allegedly sent Malinka an Amended Master Purchase and Sales Agreement (the "Amended Agreement").[7] Malinka alleges that Johnson misrepresented the nature of the amendments and refused to give him time to review them with counsel. Malinka signed the Amended Agreement on December 31, 2018. Plaintiffs allege that they paid the price

---

[3] *Id.* ¶ 10.

[4] Notice of Removal ¶¶ 6–8.

[5] Compl. ¶ 11.

[6] Docket No. 6-1.

[7] Docket No. 6-2.

due in full by November 2020, but Defendants have refused to deliver the simulator or otherwise comply with their contractual obligations to Plaintiffs.

Plaintiffs sued Defendants in Utah state court on October 28, 2021.[8] On December 7, 2021, Defendants removed to this court based on diversity jurisdiction under 28 U.S.C. § 1332(a).[9]

## II.  LEGAL STANDARD

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).[10] Because the court lacks personal jurisdiction over Defendants, the court will grant the motion without addressing Rule 12(b)(6).

The plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant.[11] Where, as here, there has been no evidentiary hearing,[12] that burden is a light one; the plaintiff need only make a *prima facie* showing of personal jurisdiction.[13] In evaluating the plaintiff's showing, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[14]

In determining whether a federal court has personal jurisdiction over a defendant in a case arising under state law, the court must determine (1) whether Utah law authorizes jurisdiction and

---

[8] Docket No. 2 at 6–21.

[9] Docket No. 2 at 1–4.

[10] Docket No. 6.

[11] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008)).

[12] Neither party has moved for an evidentiary hearing so the court may decide the motion on the pleadings (with attachments) and affidavits. *Id.*; Fed. R. Civ. P. 12(i).

[13] *Shrader*, 633 F.3d at 1239; *see Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[14] *Wenz*, 55 F.3d at 1505 (internal quotations and citations omitted).

(2) whether the exercise of jurisdiction comports with due process.[15] Utah's long-arm statute authorizes jurisdiction over non-resident defendants "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[16] Therefore, the personal jurisdiction analysis collapses into one inquiry: whether exercising jurisdiction comports with due process.[17]

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"[18] Such "minimum contacts" may give rise to either general or specific personal jurisdiction.[19] "General jurisdiction, as its name implies, extends to any and all claims brought against a defendant."[20] "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State."[21] Specific jurisdiction, by contrast, applies when "in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[22] The defendant must have taken some action "by which it purposefully avails itself of

---

[15] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[16] Utah Code Ann. § 78B-3-201(3).

[17] *ClearOne Comm'n, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (explaining that the personal jurisdiction inquiry under the Utah long-arm statute is a due process one).

[18] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[19] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012).

[20] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks and citations omitted).

[21] *Id.*

[22] *Dudnikov*, 514 F.3d at 1078 (citing *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006)).

the privilege of conducting activities within the forum State" and the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum."[23]

The fact that a party entered into a contractual relationship with a Utah citizen is not sufficient to establish minimum contacts.[24] Instead, the Court must evaluate whether that party "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state."[25] The Supreme Court has instructed courts to consider the parties' prior negotiations, their contemplated future consequences, the terms of their contract, and the parties' actual course of dealing.[26]

### III. DISCUSSION

It is undisputed that the court lacks general jurisdiction over Defendants, who are Arizona citizens. Plaintiffs also fail to show that the court has specific jurisdiction over any Defendant.

In the recent case of *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, an Oklahoma plaintiff had brokered a deal with Arkansas defendants to sell equipment to a buyer in California.[27] The Tenth Circuit held that the defendants' contacts were insufficient to show purposeful direction toward Oklahoma.[28] The Tenth Circuit reasoned:

> [T]he parties' entire business relationship comprises three transactions over nine years. None of these transactions was negotiated or executed in person. Each transaction was a discrete occurrence, unrelated to the others in any meaningful way. On only two occasions did the parties reach an agreement, and only once—in the transaction subject to this lawsuit—was that agreement substantially performed.

---

[23] *Ford Motor Co.*, 141 S. Ct. at 1024–25 (internal quotation marks and citations omitted).

[24] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

[25] *Id.* at 473 (quotation marks omitted).

[26] *Id.* at 479.

[27] 946 F.3d 1223 (10th Cir. 2020).

[28] *Id.* at 1230–31.

5

> These contacts are insufficient to show purposeful direction. Each transaction concerned the isolated sale or prospective sale of a piece of dental equipment without any long-term or continuing obligations involving Oklahoma. Moreover, the transactions implicated Oklahoma only in an attenuated fashion, as Dental Dynamics serves as a broker in transactions between dentists located across the United States.
>
> . . .
>
> The primary contract that Dental Dynamics relies on is a two-page bill of sale negotiated over email that envisions no enduring relationship between the parties and concerns only the sale of a single piece of equipment that never physically passed through the forum state.[29]

The Tenth Circuit also rejected the argument that maintaining a business relationship by exchanging text messages or other communications would constitute purposeful availment.[30]

On facts similar to *Dental Dynamics*, Plaintiffs fail to show sufficient Utah contacts to support specific jurisdiction. Plaintiffs allege that Johnson reached out to Malinka to put together the Airbus deal, but this deal involved the sale of a single piece of equipment that does not appear to have had any connection to Utah[31] and the details of that deal are not part of this suit. Plaintiffs allege that after the first transaction, Malinka and Johnson continued to correspond regarding potential deals. Over a year after the first deal, Johnson communicated with Malinka by phone and email about the Boeing deal. These bare allegations of communication are insufficient to show purposeful availment.[32] Furthermore, there is nothing in the Agreements suggesting that there

---

[29] *Id.* at 1230 (internal quotation marks and citations omitted).

[30] *Id.* at 1231.

[31] *See id.* at 1230 (finding insufficient contacts where "[e]ach transaction concerned the isolated sale or prospective sale of a piece of dental equipment without any long-term or continuing obligations involving" the forum state).

[32] *Id.* at 1231 (finding that an allegation that the parties "were engaged in a business relationship since approximately 2008" too conclusory to support a finding of ongoing business relationships and that the exchange of text messages "many times" did not show purposeful availment); *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) ("Ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity.") (internal quotation marks and citations omitted).

would be an ongoing relationship between the parties after the terms of the Agreements were complete. Rather, the Agreements "concern[ ] only the sale of a single piece of equipment that never physically passed through the forum state"[33] and has no connection with Utah other than as Plaintiffs' domicile.

This case differs from *Dental Dynamics* in various respects, but none of them suffices to show purposeful availment. Johnson traveled to Utah once to speak with potential investors, but nothing seems to have come of the meeting, and it appears unrelated to the substance of Plaintiffs' claims. Johnson allegedly discussed the terms of the Boeing deal with Malinka on that trip, but a single trip is insufficient to satisfy due process.[34] The complaint arguably alleges an ongoing agreement between Johnson and Malinka that Malinka would receive a commission in exchange for assisting with deals, but entering into a contract with an out-of-state citizen does not constitute purposeful availment.[35] Furthermore, that alleged agreement involved isolated rather than ongoing obligations: it plausibly came to fruition only twice, in the Airbus deal and the Boeing deal. Thus, the court concludes that Plaintiffs have not shown sufficient contacts with Utah to support the exercise of personal jurisdiction over Johnson or SEF.

Regarding Financing, there are no facts showing that Johnson acted on behalf of Financing in making his Utah contacts or otherwise showing that Financing had Utah contacts. Financing was not a party to the Agreement,[36] and even if Financing were a party to the Agreement this

---

[33] *Dental Dynamics, LLC*, 946 F.3d at 1230.

[34] *Cf. Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (finding single trip by an executive officer to the forum state insufficient to support general jurisdiction).

[35] *Burger King*, 471 U.S. at 478.

[36] *See* Docket Nos. 6-1, 6-2.

would not suffice to show minimum contacts.[37] At most, Financing is the parent entity of SEF,[38] and "[a] court may not automatically exercise jurisdiction over a parent corporation [simply because] the court may exercise jurisdiction over a subsidiary."[39] The court must dismiss the claims against Financing for lack of personal jurisdiction.

In sum, the parties' actual course of dealing fails to demonstrate purposeful direction toward Utah. Instead, their interactions show two distinct deals with no ongoing obligations between the parties and no connection with Utah other than as Plaintiffs' domicile. Therefore, Plaintiffs have failed to demonstrate that the exercise of personal jurisdiction over Defendants comports with due process and the court will grant the motion to dismiss.

## IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

DATED this 1st day of March, 2022.

BY THE COURT:

Ted Stewart
United States District Judge

---

[37] *Burger King*, 471 U.S. at 478.

[38] Compl. ¶ 5.

[39] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 n.4 (10th Cir. 2005) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)) (explaining that personal jurisdiction over a subsidiary supports jurisdiction over the parent where the subsidiary was acting as the parent's agent).